**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

                            Case No. 3:20-cr-99-MMH-JRK

vs.

JASON CORY

_____

## O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss Indictment or in the Alternative Grant a Bill of Particulars (Doc. 57; Motion), filed on March 31, 2021.  In the Motion, Defendant Jason Cory requests that the Court dismiss Counts One through Three of the Indictment in which Cory is charged with committing wire fraud in violation of 18 U.S.C. § 1343.  See Motion at 1; Indictment (Doc. 1) at 1-6.  In addition, Cory seeks dismissal of Count Four of the Indictment in which he is charged with illegal monetary transactions (commonly referred to as money laundering) in violation of 18 U.S.C. § 1957.  Motion at 1; Indictment at 6.  In the alternative, Cory asks the Court to order the government to provide a bill of particulars.  Motion at 1.  On April 21, 2021, the government filed a response in which it opposes the Motion in its entirety.  See United States' Response in Opposition to Defendant's Motion to Dismiss Indictment (Doc. 66; Response).  With the permission of the Court, Cory filed a reply to the government's Response on May 18, 2021.  See Defendant's Reply to

United States' Response in Opposition to Defendant's Motion to Dismiss Indictment (Doc. 70; Reply).  Accordingly, the matter is ripe for review.

## I.    Procedural History

On July 7, 2020, a grand jury sitting in the Middle District of Florida returned a four-count Indictment charging Cory with three counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of money laundering in violation of 18 U.S.C. § 1957.  See generally Indictment.  In the Indictment the government alleges that Cory knowingly participated in a scheme to defraud in which he used his position of power at an IT Company to make fraudulent payments from the company and its subsidiary's bank accounts to Gambit Matrix LLC (Gambit).  Id. at 3.  The government further alleges that Gambit was a shell company that Cory created for the sole purpose of receiving the fraudulent payments.  Id. at 3-4.  According to the Indictment, Cory avoided detection by making false statements when questioned about the payments, falsifying a contract for consulting services he never performed, concealing his ownership interest in Gambit from board members and employees of the IT Company, and creating fictitious owners of Gambit through false email accounts and social media profiles.  Id. at 4.  As for the money laundering charge in Count Four, the government alleges that Cory used $11,630.30 of the fraudulent payments he received to purchase a Rolex Daytona Steel Yellow Gold White Dial Automatic Men's Watch.  Id. at 6.

On August 20, 2020, Cory entered a plea of not guilty to each of the charges. <u>See</u> Minute Entry (Doc. 21).

Cory now moves to dismiss Counts One through Three of the Indictment pursuant to Rule 12(b)(3)(B)(v), Federal Rules of Criminal Procedure (Rule(s)), on the theory that these counts of the Indictment fail to state a criminal offense. <u>See</u> Motion at 1.  In the alternative, Cory argues that Counts One through Three should be dismissed pursuant to Rule 12(b)(3)(B)(iii), for lack of specificity.  <u>Id.</u> If Counts One through Three are dismissed under either theory, Cory argues that the Court should also dismiss Count Four for failure to state an offense because it "is based upon the sufficiency of the wire fraud scheme alleged in Counts One, Two, and Three."  <u>Id.</u> at 12.  If the Court does not dismiss the charges in Counts One through Four of the Indictment, Cory alternatively requests that the Court order the government to provide a bill of particulars pursuant to Rule 7(f).  <u>Id.</u>

In seeking dismissal of Counts One through Three, Cory argues that these charges in the Indictment fail "to state an offense based on legal impossibility." Motion at 1.  Specifically, he asserts that the factual allegations that form the basis of Counts One through Three "are legally impossible, self-contradictory, and self-defeating."  <u>Id.</u> at 7.  According to Cory, the government alleges that Cory "could authorize payments" on behalf of the IT Company and its subsidiary

3

while describing his actions as "embezzlement," which by definition requires that a defendant act "without authorization."  Motion at 6-7.  In addition, in seeking dismissal based on "lack of specificity," Cory argues that because he was authorized to determine his own compensation and reimbursement, the government has failed to allege "specific facts, laws, or corporate governance documents" to support its theory that the payments made to Gambit were fraudulent.  Id. at 10-11.  Because the money laundering charge is predicated upon the wire fraud charged in Counts One through Three, Cory argues that Count Four must also fail.  Id. at 12.  Alternatively, Cory asserts that the Court should order the government to provide a bill of particulars identifying the factual basis for the "the grand jury's allegation that this CEO stole from his own company."  Id. at 14.

In response to Cory's legal impossibility argument, the government contends that although the Indictment alleges that Cory did not need permission to make payments out of the corporate accounts, it "cannot be reasonably read to allege that he was authorized to disburse or use the IT Company's funds for any purpose, including illegitimate ones such as theft." Response at 7.  The government relies on United States v. Fullwood, No. 3:16-CR-48-J-34JBT, 2016 WL 5106940, at *5 (M.D. Fla. Sept. 20, 2016), to argue that use of the term embezzlement in an indictment charging a defendant with wire fraud does not affect the sufficiency of that indictment.  See Response at 8.

4

As to lack of specificity, the government maintains that Cory's ability to determine his own compensation or reimbursements is "outside the four corners of the Indictment" and unrelated to the allegations of Cory's purported scheme to defraud.  Id. at 10.  With regard to Cory's request for a bill of particulars, the government argues that the Indictment sufficiently alleges the elements of wire fraud in that it describes a scheme to defraud wherein Cory deprived the IT Company and its subsidiary of money in the form of illegitimate business payments to his shell company by falsely representing the circumstances surrounding the payments.  See id. at 14.  Further, the government maintains that the Indictment notifies Cory of the charges and allows him to "rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.  Id. (citing United States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011)).  In his Reply, Cory generally argues that Fullwood is "inapplicable to any resolution of the pending Motion to Dismiss."  See generally Reply at 2.

## II.    Standard of Review

Under Rule 7(c)(1), an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"  The Eleventh Circuit Court of Appeals has articulated a three part test to determine the sufficiency of an indictment:

> An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

United States v. Steele, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal citation and quotation omitted). An indictment is generally sufficient "if it set[s] forth the offense in the words of the statute," as long as those words include all of the elements of the offense. Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Adkinson, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) (noting that an indictment need do little more than track the language of the statute). Consistent with this authority, the Eleventh Circuit has explained that an indictment that tracks the language of the statute is sufficient "as long as the language sets forth the essential elements of the crime." United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983).

However, an indictment that follows the statute is nevertheless insufficient if it fails to sufficiently apprise the defendant of the charged offense. United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). Thus, even if an indictment tracks the language of the criminal statute, it still must include enough facts and circumstances to inform the defendant of the specific offense being charged. United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003). This is necessary "not only to give the defendant notice as guaranteed by the [S]ixth [A]mendment, but also to inform the court of the facts alleged to enable

it to determine whether the facts are sufficient in law to support a conviction."

<u>See</u> <u>Belt v. United States</u>, 868 F.2d 1208, 1211 (11th Cir. 1989).  An indictment does not, however, have to "allege in detail the factual proof that will be relied upon to support the charges."  <u>United States v. Crippen</u>, 579 F.2d 340, 342 (5th Cir. 1978).[1]  Notably,

> [i]n ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes.  It is well-settled that a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.

<u>Sharpe</u>, 438 F.3d at 1263 (internal citation and quotation omitted).

## III.  Applicable Law

Wire fraud occurs when "'a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or causes the use of the . . . wires for the purpose of executing the scheme or artifice.'"  <u>See</u> <u>United States v. Bradley</u>, 644 F.3d 1213, 1238 (11th Cir. 2011) (quoting <u>United States v. Ward</u>, 486 F.3d 1212, 1222 (11th Cir. 2007)).[2]  To establish a "scheme or artifice to defraud," the government must offer proof of "'a material misrepresentation, or the omission or concealment of a material fact

---

[1]    In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[2]    Because "[m]ail and wire fraud are analytically identical save for the method of execution," <u>Bradley</u>, 644 F.3d at 1238 (footnotes omitted), the Court relies on authority pertaining to both mail and wire fraud in its analysis here.

calculated to deceive another out of money or property.'" Id. (quoting United

States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009)).  Although the wire

fraud statute does not define the meaning of "defraud," the Supreme Court has

explained that "the words 'to defraud' commonly refer 'to wronging one in his

property rights by dishonest methods or schemes,' and 'usually signify the

deprivation of something of value by trick, deceit, chicane or overreaching.'" See

McNally v. United States, 483 U.S. 350, 358 (1987) (citation omitted)

superseded by 18 U.S.C. § 1346.

## IV.   Discussion

### a.  Motion to Dismiss Indictment

Cory argues that because the government alleges that he could authorize

payments from the IT Company and its subsidiary's bank account without

permission, "it was legally impossible for him to embezzle from those accounts."

Motion at 7.  This is so, according to Cory, because embezzlement requires that

he act "contrary to authorization."  Id. at 4 (citing United States v. Young,[3] 955

F.2d 99, 103 (1st Cir. 1992)).  In support, Cory relies on United States v. Nieman,

see Motion at 10, in which the court, under the specific facts and circumstances

of that case, held that "the embezzlement counts do not sufficiently allege any

---

[3] The sentence following the "contrary to authorization" language in Young relied upon by Cory explains, "[h]e will have 'fraudulently converted' property entrusted to him by another."  955 F.2d at 103.  This is exactly the type of conduct described in the Indictment and the type that is actionable under the wire fraud statute.

8

conduct that is legally cognizable as 'embezzlement' or 'misapplication.'" See United States v. Nieman, 265 F.Supp.2d 1017, 1036-37 (N.D. Iowa 2003) (finding that reopening overdrawn accounts that "had allegedly already been closed and the negative balances 'charged off' . . . does not allege 'the voluntary and intentional taking, or conversion to one's own use, of the property of another,'" under 18 U.S.C. § 656.).

In Response, the government contends that Cory's characterization of the allegations in the Indictment as a legal impossibility is "absurd, and contrary to the rule that in 'analyzing challenges to the sufficiency of an indictment, courts give the indictment a common sense construction.'" Response at 7 (citing United States v. Wayerski, 624 F. 3d 1342, 1349 (11th Cir. 2010)).  The government points out that the cases on which Cory relies involved "specific embezzlement statutes" that are inapplicable here because Cory is not charged with embezzlement. Id. at 8.  Further, the government argues that in Fullwood, the Court addressed a similar contention and found "that 'the isolated use of the word embezzle to describe Fullwood's actions in taking the funds from the campaign account does not change the Court's assessment.'"  Id. (quoting Fullwood, 2016 WL 5106940 at *3).[4]  Cory disagrees.  See generally Reply.

---

[4] The Court notes that this quotation from Fullwood is found at pincite *5.

To the extent Cory contends that the circumstances surrounding the Court's discussion of "embezzlement" in a wire fraud indictment in <u>Fullwood</u> are distinguishable from those presented here, the Court agrees.  In <u>Fullwood</u>, the Court and the parties had various discussions throughout the proceedings regarding the government's use of the term "embezzle" in the indictment. However, none of these discussions involved an argument that the indictment stated a legal impossibility based on the defendant's alleged authority.  The issue first arose in a motion for a bill of particulars, in which the defendant maintained that the use of "embezzle" in the indictment made it difficult to determine the identity of the alleged victims of the charged scheme and artifice to defraud.  <u>Fullwood</u>, 2016 WL 5106940 at *1.  At a hearing on the motion, the Honorable Joel B. Toomey, United States Magistrate Judge, questioned the government's use of the term under those particular facts but ultimately resolved the issue by ordering the government to identify the purported victim. Hearing Transcript, <u>United States v. Fullwood</u>, Case No. 3:16-cr-48-HLA-JBT (May 17, 2016) (Doc. 26).  The government eventually advised that the sole victim of the scheme or artifice to defraud was the defendant's campaign contributors.  <u>See</u> Order, <u>United States v. Fullwood</u>, Case No. 3:16-cr-48-HLA-JBT (July 21, 2016) (Doc. 39).  Later, in a motion to dismiss, the defendant argued that the allegations that the defendant "embezzled" from the campaign accounts, improperly suggested that the campaign contributors continued to

10

have a "property interest" in their contributions after they made them. <u>See</u> Defendant Fullwood's Motion to Dismiss and Incorporated Memorandum of Law, <u>United States v. Fullwood</u>, Case No. 3:16-cr-48-HLA-JBT (Aug. 19, 2016) (Doc. 46). In denying the motion to dismiss, the Court determined that this argument mischaracterized the government's theory of the case which charged that Fullwood "fraudulently <u>obtained</u> the donations in the first place." <u>Fullwood</u>, 2016 WL 5106940 at *4-5. After carefully reviewing the indictment, the Court determined that the factual allegations were sufficient to apprise the defendant of the charged scheme to defraud. <u>Id.</u> at 5. Additionally, the Court observed that the government's use of the term "embezzled" did not change the fact that the government had sufficiently apprised the defendant of the wire fraud charges. Here, Cory makes a distinct argument of legal impossibility under distinguishable facts and circumstances, thus the Court does not find <u>Fullwood</u> to be dispositive of the Motion.

Legal impossibility occurs "when the actions which the defendant performs or sets in motion, even if fully carried out <u>as he desires</u>, would not constitute a crime." <u>See</u> <u>United States v. Farner</u>, 251 F.3d 510, 513 (5th Cir. 2001) (citing <u>United States v. Oviedo</u>, 525 F.2d 881, 883 (5th Cir. 1976)). For example in <u>United States v. Vesaas</u>, 586 F.2d 101 (8th Cir. 1978), cited by Cory in the Motion, the Eighth Circuit Court of Appeals, found an indictment "fatally defective in failing to set forth" the offense of making a false statement under

18 U.S.C. § 1001. 586 F.2d at 104. There, the government alleged that the defendant falsely stated that he did not know of any "property owned by his deceased mother and himself in joint tenancy, whereas in truth and fact, as he [t]hen well knew, the defendant and his deceased mother [h]eld joint tenancy ownership rights in the stock of several companies . . . ." Id. at 103. However, because "it is legally impossible to be a joint tenant with" a deceased person, the court could not discern how the alleged representations were false. Id. For this reason, dismissal on the grounds of impossibility was warranted. Id. at 104.

In contrast to the allegations supporting the charge in Vesaas, the fraudulent scheme charged in Counts One through Three is not a legal impossibility. It is possible to be authorized to make payments on behalf of a company and, at the same time, to abuse that authority in a way that constitutes criminal fraud. In fact, it is well settled that the breach of trust of a fiduciary who uses his or her position of authority "to make secret profits" can constitute fraud within the meaning of the wire fraud statute. See United States v. Dorfman, 335 F. Supp. 675, 679 (S.D.N.Y. 1971) (citations omitted); see also United States v. Dixon, 536 F.2d 1388, 1399 (2d Cir. 1976) (citations omitted) ("There is abundant authority that a scheme to use a private fiduciary position to obtain direct pecuniary gain is within the mail fraud statute."); see also United States v. Hoffa, 205 F. Supp. 710, 716 (S.D. Fla. 1962) (citations omitted) ("Using a fiduciary position to obtain secret profits is not only a breach of trust

12

but an active fraud, and such conduct is condemned by the mail fraud statute if the mail is used in furtherance of the execution of said scheme."). In the Motion, Cory concedes that his authorization was limited to reimbursement for "legitimate business expenses." See Motion at 10 (emphasis added). Consistent with Cory's characterization of his authority, the government alleges that the business expenses he paid himself were illegitimate. See Indictment at 4. Specifically, the government alleges that it was part of Cory's scheme and artifice to defraud to

> falsify[] an invoice and a contract between the IT Company and defunct Gambit entity, to make it appear as if Gambit had been providing legitimate consulting services to the IT Company in exchange for the funds CORY had stolen, when in truth and fact Gambit performed no services for either the IT Company or the Subsidiary.

Id. Cory's contention that the government's allegation that he could authorize payments warrants dismissal of the wire fraud charged because the term embezzlement requires he acted contrary to authorization, is without merit. The Eleventh Circuit instructs that "[a]s a general rule, 'practical, rather than technical, considerations govern the validity of an indictment.'" See United States v. Seher, 562 F.3d 1344, 1356 (11th Cir. 2009) (quoting United States v. Hooshmand, 931 F.2d 725, 735 (11th Cir. 1991)); see also United States v. London, 550 F.2d 206, 211 (5th Cir. 1977) ("The validity of the indictment must be determined by practical, not technical, considerations."). Here, a common

sense reading of the Indictment does not support a conclusion that Cory's alleged authorization to make payments on behalf of the IT Company and its subsidiary was without any limits and such that it was "impossible" for him to engage in fraudulent activity such as embezzlement or wire fraud.

Cory is not charged with embezzlement, he is charged with wire fraud.  In the Indictment, the government alleges that Cory could authorize payments on behalf of the IT Company and its subsidiary but abused that authority to pay himself through a shell company for fraudulent, illegitimate business expenses. He accomplished these fraudulent transactions through the use of wires in interstate commerce.  The Court finds the Indictment is not due to be dismissed for failure to state an offense on the basis of legal impossibility.

Cory similarly[5] relies on his purported authority to make payments on behalf of the IT Company and its subsidiary to argue that the Indictment should be dismissed for lack of specificity.  Cory argues that the Indictment is due to be dismissed because he had "legal authority to both determine his own compensation and to reimburse himself for legitimate business expenses . . . including by directing payments to be made through his wholly-owned LLC, Gambit Matrix." Id. at 10.  As such, the government has not identified what

---

[5] Indeed, Cory cites to United States v. Nieman, 265 F.Supp.2d 1017, 1036-37 (N.D. Iowa 2013) in support of both arguments.

laws, facts, or governance documents prohibit him from reimbursing himself for "legitimate business expenses." Id. at 10-11.

Preliminarily, the Court notes that the Indictment specifically alleges that the payments Cory obtained were <u>illegitimate</u> and that Cory went to great lengths to hide and conceal that fact from employees at the IT Company. <u>See</u> Indictment at 4. Further, upon review of the Indictment, the Court finds that it sufficiently alleges the elements of wire fraud with the requisite specificity. Under the heading "The Scheme to Defraud," the Indictment charges that Cory "did knowingly and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises." <u>See</u> Indictment at 2. The Indictment elsewhere states that Cory executed the scheme using wires in interstate commerce. Id. at 5. These allegations are sufficient to state the essential elements of wire fraud. <u>See</u> <u>United States v.</u> <u>Shoss</u>, 523 F. App'x 713, 717 (11th Cir. 2013).

Under the heading "Manner and Means," the government alleges that it was "<u>part of the scheme and artifice to defraud</u>" for Cory to control operations at the IT Company and become a signatory of the company's bank account, solicit investments in the IT Company, use Gambit to receive payments for consulting services Gambit never actually provided to the IT Company, and conceal his actions from the employees of the IT Company. <u>See</u> Indictment at 3-4 (emphasis

15

added).   Specifically, he is alleged to have concealed his actions by falsely representing that he had no controlling interest in Gambit, creating fake owners through fictious email and social media accounts, making false statements when questioned by individuals working for the IT Company, and falsifying a contract and invoice for services never performed.  Id. at 4.

"[A]n indictment may be short and simple—its allegations are sufficient if they include all elements of the offense and briefly describe the facts of the commission of the offense."  United States v. deVegter, 198 F.3d 1324, 1330 (11th Cir. 1999).  Taken together, the allegations in the Indictment are sufficient to apprise Cory that the charged scheme to defraud includes the contention that he knowingly and intentionally misrepresented, omitted, and concealed material facts to obtain money from the IT Company and its subsidiary by virtue of a shell company named Gambit and that he used wire communications in interstate commerce to do so.  See Bobo, 344 F.3d at 1083; deVegter, 198 F.3d at 1330; London, 550 F.2d at 211 ("The test is not whether the indictment might have been drawn with greater certainty and exactitude, but rather whether it set forth the elements of the offense charged and sufficiently apprised defendants of the charges."); see also United States v. Kelly, No. 1:13-cr-108-WSD-JSA, 2014 WL 1153375, at *13 (N.D. Ga. Mar. 21, 2014).  Accordingly, Cory's Motion to dismiss Counts One through Three of the Indictment is due to be denied.  Because Cory's argument in support of dismissal of Count Four is

dependent on the Court's dismissal of Counts One through Three, the Motion as to Count Four is also due to be denied.

### b. Motion for Bill of Particulars

Where an indictment sufficiently charges all the essential elements of an offense, "but fails to inform the accused with sufficient particularity of the charges against which he will have to defend at the trial, the remedy is to move for a bill of particulars." See Cefalu v. United States, 234 F.2d 522, 524 (10th Cir. 1956). "The purpose of a bill of particulars is to: (1) inform a defendant of the charges so that a defendant can prepare a defense; (2) avoid surprise at trial; and (3) enable a defendant to plead double jeopardy." United States v. Al-Arian, 308 F. Supp. 2d 1322, 1359 (M.D.Fla. 2004); see also United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985).[6]  A bill of particulars is not warranted when the

---

[6]     In United States v. Manetti, 323 F. Supp. 683, 695-97 (D. Del. 1971), the district court elaborated on the role and scope of a bill of particulars:

> Since one in this position must be presumed innocent, it must be assumed that he has no knowledge of the facts other than those supplied to him by the government.  Accordingly, the bill of particulars is designed to fill any gap between the facts disclosed by the indictment and that "set of facts" which will permit him the opportunity of preparation. What constitutes this "set of facts" in a given case, however, is a somewhat elusive concept.  Obviously, it is something other than the minimum which would apprise the defendant of the charges against him, and therefore, be sufficient to sustain an indictment. Otherwise, there would be no purpose for a bill of particulars.

> . . . a defendant is entitled to have the government inform him, either by way of indictment or bill, only of those central facts which will enable him to conduct his own investigation of the transactions giving rise to the charge.

Manetti, 323 F. Supp. at 695-96.

information sought is available through other sources, such as the indictment or discovery.  See United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986), modified on other grounds, 801 F.2d 378 (11th Cir. 1986).  Additionally, it is inappropriate to use a bill of particulars "'to obtain a detailed disclosure of the government's evidence prior to trial . . .,'" United States v. Kilrain, 566 F.2d 979, 985 (5th Cir. 1978) (quoting United States v. Perez, 489 F.2d 51, 70-71 (5th Cir. 1973)), or "to explain the legal theories upon which [the government] intends to rely at trial."  United States v. Burgin, 621 F.2d 1352, 1359 (5th Cir. 1980).

In support of his request for a bill of particulars, Cory argues that the Indictment fails to explain "the factual basis for the grand jury's allegation that this CEO stole from his own company."  Motion at 14.  Specifically, Cory contends that

> the indictment does not allege that Mr. Cory's actions violated the bylaws of the IT Company. Or violated Board of Directors resolutions. Or violated Delaware law. Defendant Cory needs to be informed of these critical facts in order "to allow him to prepare his defense" and "to minimize surprise at trial." Anderson,[7] supra. This is particularly true here because no documents provided by the Government in Rule 16 discovery speak to this vitally important issue.

---

[7] United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986).

Id. at 14.  Cory is charged with wire fraud in violation of 18 U.S.C. § 1343 and money laundering in violation of 18 U.S.C. § 1957.  He points to no authority that requires an indictment charging a defendant under these statutes to also allege violations of a company's bylaws or resolutions, or state law.  The authority Cory does point to in the Motion does not persuade the Court that the government should be ordered to identify any such violations under the particular facts of this case.  The Court will address the cases cited by Cory in support of his request for a bill of particulars below.

In Peterson, the government alleged that the defended committed the "single offense of obstruction of justice by giving the testimony he gave before the grand jury."  See 544 F. Supp. 2d 1363, 1372 (M.D. Ga. 2008).  The government did not identify how the defendant's testimony had the effect of obstructing justice or the purpose of the grand jury investigation, and thus, the court ordered the government to provide a bill of particulars containing those details.  Id.  Cory does not explain how the underlying facts and holding in Peterson are at all relevant to the issue before the Court in the instant case, other than that it represents an example of a court exercising its discretion to order a bill of particulars under the specific charges and facts before it.

Cory also attaches a one-page order from an unrelated case in support of his request for a bill of particulars.  See United States v. Truitt, Case No. 8:20-cr-227-T-23CPT (M.D. Fla. Oct. 19, 2020).  In Truitt, the alleged scheme and

artifice to defraud involved a charity donation challenge in which the defendant used gift cards and fake identities to fraudulently obtain money in direct violation of the rules of the challenge.  <u>See</u> Indictment, <u>United States v. Truitt</u>, Case No. 8:20-cr-227-T-23CPT (M.D. Fla. July 23, 2020), Doc. 1; <u>see also</u> United States' Response in Opposition to Truitt's Motion to Dismiss Indictment, <u>United States v. Truitt</u>, Case No. 8:20-cr-227-T-23CPT (M.D. Fla. Sept. 24, 2020), Doc. 18.  As part of the challenge, a foundation pledged to match donations made to participating charities with the exception of donations made to a charity by its members themselves.  United States' Response in Opposition to Truitt's Motion to Dismiss Indictment, <u>United States v. Truitt</u>, Case No. 8:20-cr-227-T-23CPT (M.D. Fla. Sept. 24, 2020), Doc. 18.  In describing the scheme, the government explicitly asserted in the indictment and again in response to the defendant's motion that "a donation made by a charity itself did not qualify" for the promise to match donations.  Indictment, <u>United States v. Truitt</u>, Case No. 8:20-cr-227-T-23CPT (M.D. Fla. July 23, 2020), Doc. 1; <u>see also</u> United States' Response in Opposition to Truitt's Motion to Dismiss Indictment, <u>United States v. Truitt</u>, Case No. 8:20-cr-227-T-23CPT (M.D. Fla. Sept. 24, 2020), Doc. 18.  The Court granted the bill of particulars to the extent the government was required to identify the three years the offenses took place and state the material rules of the challenge "on which the United States relies in stating '[a] donation made a charity to itself did not qualify.'"  <u>See</u> Order, <u>United States v. Truitt</u>, Case No.

8:20-cr-227-T-23CPT (M.D. Fla. Sept. 24, 2020), Doc. 23.  Otherwise, the motion was denied.  Id.  In the absence of allegations that Cory's alleged scheme and artifice to defraud related to circumventing a particular rule, Truitt does not mandate that a defendant violate additional company or state laws to commit wire fraud.

Cory also relies on Murgio, but in Murgio, as in Truitt, the government affirmatively asserted that it intended to establish that he violated National Credit Union Administration regulations without identifying a specific regulation.  See 209 F. Supp. 3d 698, 720 (S.D.N.Y. 2016).  The Court found that the identification of the regulation that the defendant allegedly violated was necessary to allow the defendant to avoid surprise at trial.  Id.  Likewise, in Jones, the government alleged that as part of the conspiracy the defendant agreed not to report certain illegal activity and discouraged certain investigations in exchange for bribes.  See No. 1:11-CR-42-TCB-LTW, 2012 WL 4049449, at *6 (N.D. Ga. Aug. 3, 2012), report and recommendation adopted, No. 1:11-CR-42-TCB, 2012 WL 4049448 (N.D. Ga. Sept. 13, 2012).  The court ordered the government to "describe generally the illegal activity" and investigations so the defendant could adequately prepare a defense for trial.  Id. Cory relies on Truitt, Murgio, and Jones, to support his argument that the government should be required to provide a bill of particulars identifying

additional laws or rules that he violated.  However, in <u>Truitt</u>, <u>Murgio</u>, and <u>Jones</u>, a bill of particulars was ordered only where the government affirmatively alleged a violation of an additional law or rule first, and subsequently failed to support that allegation with sufficient detail.  Here, the government does not allege in the Indictment or its Response that Cory's purported fraudulent conduct was related to a violation of bylaws, Board of Directors resolutions, or Delaware laws.  As such, the Court declines to order the government to identify such violations in a bill of particulars and Defendant's Motion is due to be denied.

In light of the foregoing, it is

**ORDERED:**

Defendant's Motion to Dismiss Indictment or in the Alternative Grant a Bill of Particulars (Doc. 57) is **DENIED.**

**DONE AND ORDERED** in Jacksonville, Florida, this 30th day of July, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

lc28
Copies to:
Counsel of Record